See also, D.C., 498 F.Supp. 353.

**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY; Western Electric Company, Inc.; and Bell Telephone Laboratories, Inc., Defendants.**

**Civ. A. No. 74–1698.**

United States District Court,
District of Columbia.

Sept. 9, 1980.

Sanford Litvack, Asst. Atty. Gen., Gerald A. Connell, Antitrust Division, Dept. of Justice, Washington, D. C., for plaintiff.

George L. Saunders, Sidley & Austin, Washington, D. C., for defendants.

OPINION

HAROLD H. GREENE, District Judge.

Pretrial Order No. 19 extended the period during which the government and the defendants were to negotiate for stipulations from May 30, 1980, to August 25, 1980, and the trial date from September 1, 1980, to October 27, 1980. At a status call on July 25, 1980, the parties informed the Court of their belief that, even with the extension previously given, the stipulations could not be completed in the allotted period, and

they requested a further postponement. The Court deferred a decision on that request for five weeks pending a test of the usefulness of the ongoing stipulation process.

During the intervening period, the parties have made exceptionally diligent efforts. A number of teams of lawyers from each side have been negotiating simultaneously and without interruption[1] to meet the common goals, and the Court is impressed both with the parties' genuine and sustained effort and the product of their labors. However, it is apparent that, in spite of the substantial commitment of all counsel, it will be impossible to complete the negotiations on the entire case by September 15, 1980, the current target date. It is also clear that, should the negotiations not be completed by that date, it will not be possible to begin the trial by October 27, 1980, for the parties do need time for the conclusion of their discovery, the filing of pretrial briefs, and preparation for the trial itself. Thus, the question has arisen whether the trial should be postponed, the stipulation process be modified or aborted, or both. The Court requested the parties' recommendations on those issues, which they provided both in writing and at a status call held on September 5, 1980.

The parties have taken radically different positions with respect to the future course of the pretrial proceedings. The government recommends that the stipulation process be aborted effective immediately, and that the case be tried beginning next January, without the benefit of stipulations. In its view, should the stipulation negotiations continue as planned, the trial would have to be postponed until next summer at the earliest.[2] Defendants advocate completing the negotiations, and they suggest that this can be accomplished in time for a January trial date. Thus, the Court must consider, first, whether the stipulation process is sufficiently valuable to permit it to delay the start of the trial, and second, which set of projections regarding the time required for further pretrial proceedings is the more realistic.

I

The action was filed in 1974, but no significant progress toward trial preparation had been made by the time this Court became involved in it at the end of June 1978.[3] In the two years since then, the previously largely unfocused contentions of the parties have been significantly clarified and structured, primarily as a consequence of the preparation by each party of three successive Statements of Contentions and Proof.[4] Once the third set of Statements, of some 2,000 to 3,000 pages in length, had been filed, it became apparent that an even further focusing and narrowing of the contested issues could be achieved based on these Statements. Their examination revealed that many of the facts recited therein were not truly contested or were contested only in part, in emphasis, or in semantics. It seemed to the Court and the parties that it

---

1. The stipulation negotiations were begun in April of this year, and the number of lawyers participating therein has gradually increased. Since July, twelve teams, with at least two attorneys to each team on each side, have been engaged in this process.

2. In the government's view, if the stipulation process were aborted, the trial would still have to be postponed until January because of its need to complete its discovery during the next few months. See Part II, *infra*.

3. This was due largely to the fact that jurisdictional issues were being litigated here and on appeal, and discovery was stayed for long periods of time on that account.

4. See *United States v. American Telephone and Telegraph Co.*, 461 F.Supp. 1314, 1345 (D.D.C. 1978). It seems clear that the parties could not and did not fully realize the scope and import of their respective cases until they were required, by means of these Statements to place upon the public record detailed contentions and the evidence in support thereof. At the same time, the opposing parties learned through this mechanism far in advance of trial, rather than after months or years of the introduction of evidence, the breadth as well as the details of their opponent's contentions. The Third Statements of Contentions and Proof filed by the government and defendants on January 10 and March 10, 1980, respectively, represented the culmination of this process.

would be an enormous waste of time and resources to proceed to trial without exploring the extent to which the parties could agree upon such facts in advance of trial. Hence the stipulation negotiations, based upon the Statements of Contentions and Proof, were begun in April of this year.

Unlike the *ad hoc* efforts to arrive at some stipulations of fact which are customary in most litigation, the stipulation process in which the parties have been engaged in this case has been a sustained, systematic effort by many teams of lawyers from each side. Under close monitoring by the Special Masters, the parties have been carefully examining the tens of thousands of facts alleged in the respective Statements of Contentions and Proof to determine the possibility for agreement and stipulation between the parties as to each fact. This process has had three general purposes: (1) to shape and organize in advance of trial what would otherwise be a vast, unfocused mass of factual data into manageable, understandable, segments or "episodes"; (2) to catalogue in detail with respect to each such episode (a) those factual claims upon which the parties after negotiation could agree as uncontested,[5] and (b) those factual claims upon which the parties remain divided; and (3) to generate with respect to each of the remaining contested allegations firm and detailed lists of the witnesses and documentary evidence which each party expected to adduce at trial.

This broad endeavor was intended to produce two principal benefits. First, it was to reduce the time of what would otherwise

inevitably be an extremely long trial,[6] and second, it was to provide the parties and the Court with a "road map" of the trial well in advance of the taking of evidence. To the extent that negotiations have been completed (see *infra*), the process has yielded the results which match, and indeed exceed, the expectations of the parties and the Court. The structure of the evidence has been organized in a coherent manner; and the contested wheat has largely been separated from the uncontested chaff. While it is impossible to be precise on such matters, it is probably not wide of the mark to estimate that two–thirds or more of previously contested facts are no longer in contention by virtue of the stipulation process and that, as a result of that process,[7] it is likely that what might otherwise have been a trial lasting three years or longer,[8] will be reduced to a trial of one year or less.[9]

Because the stipulation process has already produced excellent results and has shown a substantial potential both for reducing the duration of the trial and for enhancing the quality of the ultimate judgment, it would in the Court's opinion not be responsible to abandon it now, short of its completion. Such an abandonment would return this case to the posture of a relatively unfocused, very extended trial, and it would sacrifice the investments the parties have made, both in time and energy, to bring the stipulation process to its present level of completion and excellence.

The question that remains is what continuance of the trial date is appropriate consistent with the need for completing stipulations.

5. In some instances, this required a semantic or other reshaping of the particular allegation.

6. Because of the scope and complexity of the issues, it has been conjectured that the trial of this case might turn out to be the longest in the history of federal jurisprudence.

7. The government estimates that, assuming a completion of the stipulation process, it will call approximately 100 witnesses for oral testimony, and defendants expect to call some 150 witnesses. Both sides will also submit the written testimony of a considerable number of additional individuals (who will be subject to oral cross examination).

8. The trial of *United States v. IBM*, 69 Civ. 200 (S.D.N.Y., filed January 17, 1969) which may be less complex, is well into its third year.

9. A reduction in trial time may be expected to be achieved not only because a smaller number of witnesses will be testifying (as a consequence of the elimination of issues through the stipulation process) but also because the product of that process will inevitably reduce the number and difficulty of disputes concerning admissibility of evidence, the relationship of witnesses and documents to particular transactions, and the like.

## II

We begin with the premise that the trial must begin promptly. This lawsuit is obviously extremely important in its own right, and the Court has an obligation not to permit it to languish [10] but to proceed to trial without undue delay.[11] The public has a right to expect judges and lawyers to resolve litigation of enormous consequence to the economy not only justly but also with dispatch. This consideration is especially pertinent today, when the ability of our system of justice to deal with complex cases is being serious questioned. *Shenefield Report, supra*, n. 9, at p. 82. That system is in every respect the fairest, most objective means for resolving disputes, and it seems self-evident that its status as a forum in that regard should not be jeopardized by failures of organization or logistical innovation. For these reasons, the Court has been committed ever since it assumed judicial control over this case to bring it to trial in the minimum possible period of time consistent with fairness to the parties.

As indicated, the government has suggested that, should the stipulation process be completed along present lines, a continuance of the trial to July of next year will be necessary.[12] Upon careful examination the Court finds unconvincing the government's argument that it is the stipulation process which would be largely responsible for a continuance of that magnitude.[13] The Court believes the real cause of the eight-month delay sought by the government to be attributable to its professed need to engage in a relatively massive discovery program.[14]

It appears that in this respect the government wishes to do now that which it should have done years ago. This lawsuit was filed in 1974, and even though discovery was stayed during a substantial portion of the first four years, the government could have engaged in discovery during some periods even then. In any event, at least beginning in April 1978, the parties were under no inhibition with respect to discovery, whether by way of interrogatories, depositions, or otherwise. Yet the Department of Justice did little in that respect, and it now seeks to make up for lost time, at the twelfth hour as it were, by preparing to examine documents and to take depositions on a vast scale.

The only explanation offered for this procedure is that the government is only now learning the names of defendants' witnesses, through the means of the witness lists attached to the stipulation printouts, and that until it received that information it

---

**10.** The *Report to the President and the Attorney General of the National Commission for the Review of Antitrust Laws and Procedures* (1979), chaired by the now Associate Attorney General John H. Shenefield (hereinafter cited as the *Shenefield Report*), emphasizes the "importance of effective judicial control" in complex antitrust cases, and goes on to state that (p. 14)

> Judges . . . are in the best position to ensure that litigation is expedited. They have the opportunity and, we believe, the responsibility to see that issues are focused, that discovery is streamlined, that delaying tactics are avoided, and that issues are addressed as soon as they are reasonably framed.

**11.** The *Shenefield Report, supra*, at p. 35, suggests a two-year maximum for pretrial proceedings.

**12.** This estimate is not inconsistent with projections made by the Special Masters. Defendants believe that the stipulations can be completed in three and one-half months.

**13.** The government does suggest that less than eleven percent of the total pages that must be negotiated were, in fact, negotiated between April 7 and August 29, a period of almost five months, the implication being that the remaining almost ninety percent would consume enormous amounts of time. However, actually, as discussed in detail *infra*, action has been completed on seventeen percent of the pages, and during most of the five-month period to which the government makes reference, only two or three teams of lawyers were negotiating rather than the twelve which are now available.

**14.** See, *e. g.*, Plaintiff's Memorandum dated September 4, 1980 (p. 2) which asserts that defendants' three and one-half month estimate for completion of the stipulation process is defective, among other things, because "the deposition time must be included in any estimate of the duration of the stipulation negotiations because it is an intrinsic part of the negotiation process, and of trial preparation."

could do nothing. That argumentation stands the normal trial preparation procedures on their head. Parties usually prepare for trial by securing the identities of potential witnesses through various formal and informal means;[15] they depose them well in advance of trial; and when the trial begins all discovery has long been completed.[16] See, e. g., *Lowry v. Black Hills Agency*, 509 F.2d 1311, 1315 (8th Cir. 1975). Departures from that process have been observed—e. g., in *United States v. IBM*, where the government apparently engaged in massive discovery while the trial was already in its third year—but they can certainly not be regarded as the norm.

Additionally, Pretrial Order No. 18, issued March 17, 1980, ordered discovery to be closed as of April 4, 1980, with the limited exception of discovery relating strictly to the stipulation process.[17] In view of that order, it is difficult to understand on what basis the government assumed that it could continue to engage in discovery almost *ad infinitum*.[18]

■ In short, it is apparent that the government's projections—based as they are on discovery which should have been completed or largely completed long ago[19]—cannot be accepted.

## III

■ Notwithstanding the foregoing, the Court is loath to deprive either party of a fair opportunity to present evidence and to cross–examine opposing witnesses, and it has endeavored to devise a schedule which will allow the government flexibility with respect to its necessary discovery without jeopardizing either the stipulation process or an early trial date. After full consideration of the views of the parties (as well as those of the Special Masters with their special insight into the stipulation negotiations), the Court has concluded that all essential objectives can be achieved by a continuance of the trial by approximately two and one–half months from its present date (instead of the eight months sought by the government)[20] and by an adjustment of various other pretrial procedures.

The evidence described in the Third Statements of Contentions and Proof has been divided for purposes of stipulation into 82 segments or episodes.[21] With respect to each episode, the stipulation process divides into three basic stages: (1) initial negotiations are held to discern the basic areas of agreement and disagreement; (2) the parties agree on the product of that initial negotiation and they generate a "rough

---

15. The precise name of an individual need not be known in order to designate him to be deposed; Rule 30(b)(1) of the Federal Rules of Civil Procedure states that "if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs" is adequate. Given the substantive detail of the Statements of Contention and Proof, it would seem that the government has long possessed sufficient information to construct that sort of general description.

16. Such a procedure would have been particularly appropriate in this case where the main outlines of defendants' defense and the identity of their principal witnesses could hardly have been obscure.

17. The Special Masters, by an order dated June 20, 1980, acting pursuant to authority delegated by the Court, allowed depositions to be taken for thirty days after the completion of stipulations on any particular episode.

18. The government has suggested that its deposition program might take as long as 36 more

weeks (Plaintiff's Memorandum dated September 4, 1980, p. 6).

19. Obviously, this is not a criticism of the present team of Department of Justice lawyers, which, as noted *supra*, has been working with extreme dedication and diligence to get this case ready for trial. The failure of the government to proceed with vigor earlier is probably more institutional in origin (or it may be due to the habit of overworked lawyers everywhere to become active on any particular matter only when faced with a deadline).

20. Unlike the two previously scheduled trial dates which were arrived at largely on the basis of estimates regarding the pretrial proceedings, the present date is based on a prediction borne of experience with the stipulation process and other procedures.

21. Many of these episodes constitute major antitrust disputes in their own right.

cut"; [22] and (3) after further negotiations and a period of further review the stipulation is printed in final and signed by the parties.

Out of those 82 episodes (recorded on a total of 4,213 printout pages) 20 (involving 539 pages) have been completed and signed, [23] and the government has dropped its contentions with respect to six episodes (171 pages), for an overall completion figure of 26 episodes, that is, 710 pages, or 17 percent of the total. Initial negotiations have been completed with respect to an additional 22 episodes representing 1527 pages, or 36 percent of the total. Initial negotiations have begun on 12 episodes (959 pages), or 23 percent of the total; and negotiations have not yet been started with respect to 22 episodes (1017 pages) or 24 percent of the total. In short, with respect to slightly over one–half of the pages to be considered, negotiations have either been fully or tentatively concluded, while with respect to the remaining one–half of the pages, negotiations are still in the initial stages or have not yet begun.

In the Court's view, it is not unreasonable to expect that the 22 episodes with respect to which initial negotiations have already been completed be fully and finally stipulated [24] in accordance with present standards of quality between now and December 1, 1980, a period of about three months, and that the remaining 34 episodes be advanced during the same period to the stage where initial negotiations have been concluded. [25] This would mean that by that date, approximately one–half the stipulations will be in final, completed form, and the other half will have advanced to the stage of completion of initial negotiations.

There is no insuperable reason why, after the December 1 cutoff date, the parties cannot negotiate further regarding the second half of the materials in order to achieve with respect to them, too, the refinements present in the final stipulation printouts. Six weeks will be available for such negotiations between December 1 and the new trial date. The government's affirmative presentation at trial will presumably take several months, [26] and it may be anticipated that by February 15 (six months from now, or four weeks after the start of the trial) the second half of the materials will have been stipulated to with the same degree of refinement as the first half.

Such a procedure will, of course, place some extra burdens on the parties, particularly the government, [27] since they will have to engage in trial with respect to a portion of the case while also negotiating stipulations, engaging in discovery, and preparing with respect to the remainder. However, as noted *supra*, any problems this causes to the government are attributable essentially to its failure to engage in pretrial preparations, especially necessary discovery, at earlier stages of this litigation. Beyond that,

22. During this stage, the Third Statements of Contention and Proof of the two parties are integrated with each other, and many of the basic issues are ironed out. The agreements reached remain subject, however, to final approval by each party.

23. The agreements and disagreements regarding each episode are contained in a separate volume submitted to the Court.

24. Or eliminated from consideration by a government decision to dismiss the particular episode.

25. Pretrial Order No. 21, issued this date, establishes these figures as a firm schedule. The Court realizes, of course, that stipulations can be agreed to by a certain date, or at all, only if both parties negotiate in good faith, both substantively and in terms of resources. Today's pretrial order imposes upon the Special Master the responsibility to monitor the stipulation process with care and to report to the Court periodically on any evidence of lack of good faith by either party.

26. The presentation of this evidence should appropriately begin with those episodes which are already in final stipulation form.

27. Defendants have voiced objections, on a variety of grounds, to continuing stipulation negotiations and to taking depositions during the trial. No doubt it would be preferable if this procedure could be avoided. However, to the limited degree here contemplated, it is not inappropriate. Compare *United States v. IBM, supra*, where subpoenas were issued for more than a million documents and depositions taken after the start of the trial.

however, in view of the fairly generous time periods allowed,[28] and the fact that attorneys actually engaged in trying the case need not, by and large, be the same persons who will be negotiating stipulations or taking discovery,[29] the Court's expectation that its schedule can be met is not an unreasonable one.

## IV

Extension and modification of the stipulation procedure on this basis will have scheduling consequences with respect to other phases of this case. The judicial notice labeling and dispute resolution process will have to be integrated into the stipulation process under the supervision of the Special Masters subject to the same deadlines as the latter.[30] All depositions will have to be concluded with respect to any episode within thirty days after that episode has been finally agreed to between the parties.[31] The parties' pretrial briefs, which should be limited largely to a discussion of legal issues,[32] and pretrial motions, if any, will be filed by December 5, 1980, with replies due December 22, 1980.[33] The principal pretrial conference will be held on January 7, 1981. Subjects to be considered at that conference will include the establishment of trial schedules (*i. e.,* the hours per day and days per week devoted to this trial); procedures for the marking of exhibits in advance of trial and for giving notice

with respect to the order of witnesses; and other, similar logistical arrangements.[34] Should the parties wish to have other subjects considered at the pretrial conference, they should so inform the Court in their December 5, 1980, filings. On the day of the pretrial conference, the Court will also hear oral argument on pretrial motions to the extent that such argument is required. The trial will begin on January 15, 1981.

---

28. The Special Masters estimated that the stipulation process could be fully and finally completed by February 1, 1981. The Court's schedule allows stipulations to proceed until February 15, 1981.

29. At the September 5, 1980, status call, the Court indicated that additional personnel resources might be needed if the trial was to begin with the promptness the administration of justice requires, and it was assured by the representatives of the government, including Assistant Attorney General Sanford M. Litvack, that they would make available whatever resources would be required to complete the stipulation process and to bring this case to trial by next January.

30. The timetable for the labeling of judicial notice materials established in the Court's order of August 1, 1980, is accordingly superseded.

31. This exception to the cutoff. of discovery established by Pretrial Order No. 18 was provided for by the Special Masters' order issued on June 20, 1980 (see note 17 *supra*), and it is now reaffirmed.

32. The stipulation process largely comprehends what would otherwise be included in pretrial briefs.

33. Should either party anticipate filing particularly voluminous pretrial motions, and should it wish such motions to be resolved in advance of trial, it would be well advised to file as early as possible before December 5.

34. To the extent feasible, some of these arrangements may be informally decided upon in advance of the conference.